**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHIRLEY JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 05 C 0432 |
| | ) | |
| AMERIQUEST MORTGAGE COMPANY, | ) | Judge Coar |
| AMERIQUEST MORTGAGE SECURITIES, INC., | ) | |
| and AMC MORTGAGE SERVICES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

## INTRODUCTION

As the Court is aware from Plaintiff's Motion for Summary Judgment, which she filed on August 8, 2005, Plaintiff purports to state a claim under the federal Truth in Lending Act ("TILA") and asserts two theories, one of which is based on the disclosure of Plaintiff's right of rescission, and the other of which arises from the disclosure of her loan payment schedule. (Plaintiff's third theory -- that she did not receive all required documents at her loan closing -- is not the subject of any of the parties' motions for summary judgment. The parties agree that, at this point in time, it appears the third claim involves disputed questions of fact.) For the reasons set forth in Defendants' Response to Plaintiff's Motion for Summary Judgment ("Response"), which are incorporated herein, it is Defendants, not Plaintiff, who are entitled to summary judgment.[1] The Court should also enter summary judgment in Defendants' favor on the additional ground that, since the filing of Defendants' Response (but prior to the filing of Plaintiff's Reply In Support of Her Motion for Summary Judgment), Judge Der-Yeghiayan soundly rejected the same theories of liability asserted by Plaintiff in this case. See Hamm v. Ameriquest Mortgage Company, No. 05 C 227, 2005 WL 2405804 (N.D. Ill. Sept. 27, 2005)(Exhibit A). Hamm is directly on point, and it involves virtually identical documents, the same counsel, and the same primary defendant, Ameriquest Mortgage Company ("Ameriquest"). In rejecting Plaintiff's counsel's theories in Hamm and awarding summary judgment in favor of Ameriquest, Judge Der-Yeghiayan stated that the plaintiff sought rescission "based solely upon…technical and immaterial contention[s]" and held that no reasonable trier of fact could conclude that Ameriquest's disclosures were inadequate. Id. at *2-3.

## BACKGROUND

The facts in this case are strikingly similar to those in Hamm. Plaintiff, Shirley Jones, is a consumer with a history of credit transactions. Prior to entering into the loan transaction at issue in this case, Plaintiff's credit history included monthly credit card, mortgage, and car payments. Defendants' L.R. 56.1(b)(3)(B) Statement of Additional Uncontested Material Facts incorporated as Defendants'56.1(a)(3) Statement of Uncontested Material Facts ("SMF"), ¶ 25.

In March of 2002, Plaintiff entered into a loan transaction secured by a mortgage with Ameriquest. Id., ¶ 2. Prior to entering into this loan transaction, Plaintiff determined how much she could afford to pay based on her monthly income, Id., ¶ 26, and Plaintiff understood that the payments on the loan would be due monthly. Id., ¶ 24.

[1] To avoid repetition when possible, Defendants will simply refer to the briefs filed in connection with Plaintiff's Motion for Summary Judgment where they provide support for Defendants' Motion.

During the loan closing, Plaintiff was presented and signed numerous documents, including the Important Notice To Borrowers, which states:

BY SIGNING BELOW, YOU (BORROWER(S)) HEREBY ACKNOWLEDGE:

(1) You have been given an opportunity to read your loan documents, have read them, and fully understand the terms of this loan transaction; and,

(2) You have received a full and complete set of all the loan documents you have signed with this transaction, including a copy of this notice.

Id., ¶ 5.

Though Plaintiff admits that she had the opportunity to read the loan documents, she did not read all of the documents prior to signing them at the loan closing. Id., ¶ 3. In fact, Plaintiff does not recall ever reading the One Week Form, on which she now bases one of her claims of confusion, or the Notice of Right to Cancel. Id., ¶ 15. Plaintiff never compared the Notice of Right to Cancel to the One Week Form. Id., ¶ 16. Most importantly, Plaintiff did not wish to cancel her loan during the federal three day rescission period or Ameriquest's seven day rescission period. Id., ¶ 17.

Also, despite Plaintiff's claim that her payment schedule was inadequately disclosed, Plaintiff understood both prior to, during, and after, her loan closing that her payment would be due monthly. Id., ¶ 24. During the loan closing, Plaintiff signed the Disclosure Form which indicated that her payment was due monthly. Id., ¶ 20-23. Plaintiff admits that the Disclosure Form states the start date, May 1, 2002, and the end date, April 1, 2032, of her payment period. Id., ¶¶ 21-22. It further disclosed that Plaintiff had 360 payments in this period. Id. ¶¶ 21-23. Plaintiff concedes that the 360 payments coincide with the number of months in the 30-year payment period. Id., ¶ 23.

Plaintiff also signed numerous other documents that disclosed her payment amount and the fact that it was due monthly:

- The Adjustable Rate Note signed by Plaintiff states that "I will pay principal and interest by making payments every month. I will make my monthly payments on the first day of each month beginning May 1, 2002. I will make these payments every month until I have paid all of the principal and any other charges … that I may owe under this note." Id., ¶ 6.
- The Adjustable Rate Rider signed by Plaintiff states "Interest Rate and Monthly Payment Changes." Id., ¶ 7.
- Plaintiff also signed and initialed the Escrow Account Agreement Tax & Insurance form next to the statements "Yes, I/we would like an escrow account established on this loan. Please escrow for the following: Property taxes $63.70 per month" with her initials and "Hazard Insurance $25.00 per month," with her initials. Id., ¶ 8.

- The Borrower(s) Acknowledgment at Closing in the Understanding Your Loan form signed by Plaintiff states "This document spells out the terms of your loan, including the amount of your monthly payments … Make sure you understand these terms and agree they are the ones you want before you sign any documents." Id., ¶ 4.
- The Interest Rate, Payment Due, Fees Paid, and Prepayment Penalty form also lists Plaintiff's initial interest rate and "an initial monthly payment due …" Id., ¶ 9.
- Plaintiff also initialed an Initial Escrow Account Disclosure Statement that disclosed "Your first monthly mortgage payment for the coming year will be $568.71 of which $480.01 will be for principal and interest and $88.70 will go into your escrow account." Id., ¶ 10.
- The Two-Year Fixed/Adjustable Rate Loan Principal Dwelling Program Disclosure signed and initialed by Plaintiff provides payment examples on how her "monthly payment can change twice each year based on changes in the interest rate." Id., ¶ 11.

Therefore, Plaintiff signed at least seven documents in addition to the Disclosure Form that disclosed the payment amount and the fact that a payment would be due monthly.

Though Plaintiff understood her payment schedule, and though Plaintiff did not ever read or rely on the One Week Form or the Notice of Right to Cancel, Plaintiff now asserts that her rescission rights and payment schedule were not fully and completely disclosed. Interestingly enough, Plaintiff's Amended Complaint's assertions of supposed confusion did not emerge until after she received a solicitation letter from her present counsel. Id., ¶ 28.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). "[I]f it is clear that a plaintiff will be unable to satisfy the legal requirement necessary to establish its case, summary judgment is not only appropriate, but required." Nevarez v. O'Connor Chevrolet, Inc., 303 F. Supp. 2d 927, 932-933 (N.D. Ill. 2004). "It is the responsibility of the party opposing the motion for summary judgment to set forth specific facts demonstrating that there is a genuine issue for trial." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

## ARGUMENT

### I. Ameriquest Clearly And Conspicuously Disclosed Plaintiff's Rescission Right In Accordance With TILA.

As Defendants explained in their Response, the Rescission Model Form H-8 Notice of Right to Cancel signed by Plaintiff fully complies with TILA. Consequently, Plaintiff's counsel has manufactured a hypothetical claim that the One Week Form violates TILA. The Court rejected this argument in Hamm, and so should this Court.

#### A. The Reasoning Of Hamm Forecloses Plaintiff's Claims.

As Defendants explained in their Response, the One Week Form is a well-designed document that, as a benefit to consumers, provides time *in addition to* the federal three day rescission period so that consumers may fully consider the serious nature of their loan transactions. See Response, pp. 2-3, 8-10. Despite Plaintiff's counsel's "chart" included in their Motion for Summary Judgment, which sets forth counsel's opinions as to how the One Week Form may be confusing to persons intimately familiar with TILA and its implementing regulation (all refuted in Defendants' Response at pp. 8-9), Plaintiff herself was not confused by the One Week Form. In fact, Plaintiff does not recall ever reading the One Week Form or Notice of Right to Cancel, SMF, ¶ 15, never compared the One Week Form to the Notice of Right to Cancel, Id., ¶ 16, and did not wish to cancel her loan during the federal three day rescission period or during Ameriquest's seven day rescission period, Id., ¶ 17. In effect, Plaintiff seeks to invalidate a lending policy that provides borrowers with *greater* protections than those mandated by TILA. However, this policy does not violate the letter or the purpose of the law and has been upheld in this District. See Hamm, 2005 WL 2405804 at *3.

In Hamm, Judge Der-Yeghiayan considered the One Week Form and the same arguments made by the parties in this case and found that "no reasonable trier of fact could conclude that Ameriquest's disclosures regarding the right of recision were inadequate…" Id. There, like here, the plaintiff did not read the One Week Form and did not rely on the form in any way, but nonetheless argued that the One Week Form somehow negated the Notice of Right to Cancel. Id. at *2-3. In considering plaintiff's claim, Judge Der-Yeghiayan noted the plaintiff's failure to read or rely on the One Week Form and observed that "[Plaintiff] is…seeking to rescind the mortgage agreement…based solely upon a technical and immaterial contention." The Court went on to hold that the One Week Form did not violate TILA. In so holding, Judge Der-Yeghiayan reasoned that:

> The mere fact that Ameriquest provided [plaintiff] with a separate document that explained Ameriquest's policy allowing a loan applicant seven days to cancel the loan agreement clearly should not have in any way confused an ordinary consumer. The express instructions in the Notice of Right to Cancel explaining the three day rescission rights was not in any way altered or abrogated by the language in the One Week Form. The One Week Form begins by specifically delineating the right to a three day rescission period, which is described as a "right under Federal or state law." …In a separate paragraph later in the one Week Form, Ameriquest explains that it is their policy to give one week to a loan applicant to cancel the loan in order to "give [the consumer] more time to study [the] loan documents, obtain independent advice and/or shop for a loan that [the consumer] believes is better…" It would be clear to an ordinary consumer that the three day rescission period and the one week cancellation period provided to Hamm are not synonymous. Also, as noted above, the Notice of Cancellation was provided to Hamm on a separate form from the One Week Form. Thus, no reasonable trier of fact could conclude that Ameriquest's disclosures regarding the right of rescission were inadequate under TILA.

Id. at *3 (internal citations omitted). Here, as in Hamm, the One Week Form complies with TILA.

Further, as Defendants explained in their Response, courts in other jurisdictions have held that providing consumers with a rescission period that extends longer than the period required under TILA is perfectly legal. See Response, p. 4-5(citing Kramer v. Home Savings of America, FSB, 721 So. 2d 1239, 1240 (4th Dist. Fla. 1998)("TILA does not prevent a lender from giving a borrower greater rights than the statute requires."); Hawaii Community Federal Credit Union v. Keka, 11 P.3d 1, n.9 (Haw. 2000)("[t]o our knowledge, no federal court has held that a lender violated the TILA … by reciting an expiration date *later* than the third business day following consummation of the transaction")).

**B. This Court Should Follow Hamm, Because It Is Correctly Decided And Consistent With The Purpose of TILA.**

Plaintiff's attempt to hold Ameriquest liable for a TILA violation for its use of the One Week Form is actually inimical to the purpose of TILA – the protection of borrowers – and, if successful, would invalidate a lending policy that gives borrowers greater rights than provided under TILA. A disclosure that provides borrowers with a longer period in which to consider whether they wish to rescind a loan is consistent with the stated purpose of TILA: promoting the informed use of credit. See Response, pp. 3-5. "[T]he Court 'must not follow . . . a course if in doing so [it loses] sight of the purpose behind truth in lending legislation.'" Rendler v. Corus Bank, N.A., 272 F.3d 992, 996 (7th Cir. 2001)(quoting Lyles v. Commercial Credit Plan, 660 F.2d 129, 132 (5th Cir. 1981)). Consequently, where, as here, a Plaintiff has complained of the receipt of an additional benefit that furthers the goals that underlie TILA, the lender should not be held liable under TILA.

This case is clearly a lawyer-driven lawsuit, as it is brought by a Plaintiff that was not impacted or harmed by the One Week Form. Plaintiff actually benefited from the One Week Form, since she received an extended rescission period. The Court should not stretch to make new law that would conflict with Hamm where, as here, it is unnecessary to do so in order to further the goals of TILA or to remedy some actual damage to Plaintiff. Accordingly, the Court should enter summary judgment in favor of Defendants on that portion of Plaintiff's claim which attacks the One Week Form.

## II. Ameriquest Properly Disclosed Plaintiff's Payment Schedule.

The Court should also grant Defendants' motion for summary judgment as to Plaintiff's claim that the Disclosure Form violates TILA. Hamm is dispositive of this claim, too. In Hamm, Judge Der-Yeghiayan found that a Disclosure Form virtually identical to the one in this case complied with TILA. As set forth more fully below, the Hamm opinion adopts the arguments set forth in Defendants' Response and squarely holds that the Disclosure Form clearly and conspicuously disclosed Plaintiff's payment schedule.

### A. Courts In This District Have Twice Held That Disclosures Virtually Identical Or Similar To The Disclosure Form Comply With TILA.

Despite Plaintiff's unequivocal testimony that she understood her payment schedule, Plaintiff's Amended Complaint asserts that the Disclosure Form "did not fully and completely disclose the payment schedule." Pl. Am. Complaint, ¶20. Plaintiff's counsel's position has been rejected twice in this District. In Hamm, a case involving similar documents and the same counsel, Judge Der-Yeghiayan held that a virtually identical Disclosure Form was not violative of TILA. Judge Der-Yeghiayan reasoned that:

> the payment schedule was adequately laid out in several documents signed by [plaintiff] at the closing. She also signed documents that explained that there would be approximately 360 payments due over the course of 360 months…Thus, it should have been clear to an ordinary consumer that her payments would be monthly and she should not have had any confusion regarding the payment schedule… [N]o reasonable trier of fact could conclude that the disclosures regarding the payment schedule were not clear for an ordinary consumer. We also note that [Plaintiff] admits…that she "understood both prior to, and after, her loan closing that her payment would be monthly"…and that her complaints about the adequacy of the payment schedule is also based solely on a technical and immaterial contention.

Hamm, 2005 WL 2405804 at *3. Judge Der-Yeghiayan cogently observed that plaintiff's counsel was "clearly seek[ing] to manufacture a point of confusion where none existed for the purposes of defeating the summary judgment motion" and that the lawsuit was lawyer-driven. Id.

Here, as in Hamm, Plaintiff signed numerous documents at the loan closing "that explained that there would be approximately 360 payments due over the course of 360 months." Id.; see SMF, ¶¶ 4-11, 20-23. Plaintiff admitted that the Disclosure Form listed the number, amount, and start and end dates of her payments. Id., ¶ 20-23. What is more, Plaintiff's testimony clearly shows that she understood her payment schedule. Id., ¶ 24. Plaintiff testified that all of her past credit obligations were monthly, Id., ¶ 25, and that she priced her loan based upon her other monthly payment obligations. Id., ¶ 26. Further, like in Hamm, Plaintiff admits that she "understood both prior to, and after, her loan closing that her payment would be monthly." Hamm, 2005 WL 2405804, *3, see SMF, ¶ 24. Therefore, Plaintiff's "technical and immaterial contention" that her payment schedule was not adequately disclosed must be rejected. Hamm, 2005 WL 2405804, *3.

The Hamm opinion is also supported by another virtually identical case, Redner v. Bailey & Assocs., 1991 WL 352529, *1 (N.D. Ill. Dec. 17, 1991). As set forth more fully in Defendants' Response, the Redner court also concluded that a disclosure that did not include the word "monthly" in its payment schedule did not violate TILA. Id.; see Response, pp. 10-11. Thus, the Disclosure Form simply does not violate TILA.

**B. The Court Should Follow Hamm And Redner As They Were Correctly Decided And Are Consistent With The Letter And Spirit Of TILA.**

In addition, the provision upon which Plaintiff predicates her claim, 15 U.S.C. § 1638(a)(6), provides merely that the creditor must disclose "the number, amount, and due dates or period of payments scheduled to repay the total of payments." There is no express requirement in the statute that the word "monthly" appear in the Disclosure Form, nor is there any such requirement in the implementing regulation ("Regulation Z"), 12 C.F.R. 226.18(g). Recognizing that there is no statutory or regulatory support for her position, Plaintiff has resorted to one sentence of a three-sentence passage in the FRB Commentary on Regulation Z, which does not mandate the use of the word "monthly." The Commentary, taken as a whole, provides two permissive, non-exclusive examples of what a creditor can do to comply with TILA and sets forth a general rule for implementing the second option. In that regard, it states:

> Section 226.19(g) requires creditors to disclose the timing of payments. To meet this requirement creditors may list all of the payment due dates. They also have the option of specifying the period of payments scheduled to repay the obligation. As a general rule, creditors that choose this option must disclose the payment intervals or frequency, such as "monthly" or "bi-weekly," and the calendar date that the beginning payment is due.

12 C.F.R. pt. 226 Supp. I (emphasis added). The sentence relied upon by Plaintiff – the third sentence – is merely a "general rule" pursuant to which the lender should include just two items of information: (1) the word monthly, and; (2) the calendar date of the first payment. The Commentary's use of the term "general rule," instead of mandatory language, does not proscribe the lender from providing other information from which it is apparent that payments are due monthly. See Response, p. 13 (citing Bechtel Power Corp. v. Hartford Accident & Indem. Co., 1985 WL 2264, * 1 (N.D. Ill. 1985). In the loan transaction between Plaintiff and Ameriquest, Ameriquest provided three such items of information: (1) the calendar date of the first payment; (2) the calendar date of the last payment, and; (3) the number of payments due in between. Under these circumstances, the Disclosure Form makes clear the payment schedule: 360 payments due over the course of 360 months, starting on May 1, 2002 and ending on April 1, 2032. SMF, ¶ 21-23. Because the period between May 1, 2002 and March 1, 2032 is a period of 359 months during which time 359 payments are due, and one additional payment – the 360th payment – is due on April 1, 2032, a simple reading of the Disclosure Form leads to the inextricable conclusion that there are 360 monthly payments due under the loan. Thus, Plaintiff's payment schedule was clearly disclosed in accordance with the mandate of TILA and Regulation Z and the guidelines of the FRB Commentary. See Response, pp. 11-13.

In reviewing the adequacy of a TILA disclosure, "the district judge should examine the provisions of the disclosure statement in the context of the specific documents and instrument reflecting the particular transaction in the case before the court, and, not reading one sentence or one line of the disclosure statement in isolation, determine whether there has been clear, substantial and accurate disclosure as required by the Act." Shroder v. Suburban Coastal Corp., 550 F. Supp. 377, 382 (S.D. Fla. 1982)(internal citations omitted). In determining whether or not there has been a violation of TILA, the Court can, and should, consider the "total mix of information" provided to the borrower. See In re Smith, 737 F.2d 1549, 1555 (11th Cir. 1984). The Seventh Circuit and other courts have refused to elevate form over substance and find violations of TILA in circumstances where, as in this case, Hamm, and Redner, the documents provided to the borrower provide the required information. See Response, pp. 11-13 (citing Pridegon v. Gates Credit Union, 683 F.2d 182, 187-88 (7th Cir. 1982); Sharp v. Ford Motor Credit Co., 452 F. Supp. 465, 467-8 (S.D. Ill. 1978); Mackey v. Household Bank, F.S.B., 677 So. 2d 1295, 1297 (Fla. Dist. Ct. App. 1996); Warren v. Borger, 539 N.E.2d 1284, 1290, 132 Ill. Dec. 478, 484 (Ill. App. Ct. 1989)).

This Court should not make new law that conflicts with Hamm and Redner, as it is unnecessary to do so in order to enforce the letter or spirit of the Truth in Lending Act.

In this case, the "total mix of information" included not only the Disclosure Form itself, but also seven other documents signed by Plaintiff at the closing of her loan – the Adjustable Rate Note, Adjustable Rate Rider, the Borrower's Acknowledgment at closing within the "Understanding Your Loan" form, the Escrow Account Agreement Tax & Insurance form, the Interest Rate, Payment Due, Fees Paid, and Prepayment Penalty form, the Initial Escrow Account Disclosure Statement, and the Two-Year Fixed/Adjustable Rate Loan Principal Dwelling Program Disclosure -- which disclosed that her payments would be due monthly. SMF, ¶¶ 4, 6-11. In her deposition, Plaintiff testified unequivocally that (a) her credit history prior to her loan from Ameriquest included the payment of monthly mortgage payments, monthly credit card payments, and monthly car payments; and, (b) Plaintiff understood that her loan payments would be due monthly. Id., ¶¶ 24-25. Plaintiff was not confused by the Disclosure Form, and no reasonable consumer could have been confused under these circumstances. Accordingly, the Court should grant Defendants' motion for summary judgment on Plaintiff's claim that the Disclosure Form violates TILA.

**III. Plaintiff's Prayer For Statutory Damages For The Alleged Disclosure Violations Is Barred By The Statute Of Limitations.**

Plaintiff's request for statutory damages is just as baseless as her claim that Ameriquest's disclosures violated TILA. Despite numerous decisions in cases involving Plaintiff's counsel and the clear language of TILA, Plaintiff has nonetheless brought claims for statutory damages pursuant to 15 U.S.C. § 1640(a) for the alleged disclosure violations of TILA. Id., ¶ 1. Plaintiff's request for statutory damages for any disclosure violation is barred by the one-year statute of limitations set forth in 15 U.S.C. § 1640(e). See Response, p. 15 (citing Jenkins v. Mercantile Mortgage Co., 231 F. Supp. 2d 737, 745 (N.D. Ill. 2002); Basham v. Finance American Corp., 583 F.2d 918, 927-928 (7th Cir. 1978); Hamm, 2005 WL 2405804 at *3; Brown v. Nationscredit Financial Services, 349 F. Supp. 2d 1134, 1338 (N.D. Ill. 2005); Bell v. Ameriquest Mortgage Co., Case No. 04 C 5987, 2004 WL 2973819, at *1 (N.D. Ill. Nov. 29, 2004)(J. Shadur)).

## CONCLUSION

For all the foregoing reasons, Ameriquest Mortgage Company, AMC Mortgage Services, Inc., and Ameriquest Mortgage Securities, Inc. respectfully request that the Court grant their Motion for Partial Summary Judgment, enter judgment in their favor and against Plaintiff on her claims that the One Week Form and Disclosure Form violate TILA, and grant such other and further relief as

the Court deems just.

Dated: November 1, 2005

Respectfully submitted,

**AMERIQUEST MORTGAGE COMPANY, AMC MORTGAGE SERVICES, INC., AND AMERIQUEST MORTGAGE SECURITIES, INC.,**
**Defendants**

s/ Jonathan Ledsky
One of Their Attorneys

Craig A. Varga
Jonathan N. Ledsky
Jaime S. Roginski-Kord
VARGA BERGER LEDSKY HAYES & CASEY
224 South Michigan Avenue, Suite 350
Chicago, Illinois 60604
(312) 341-9400

## CERTIFICATE OF SERVICE

Jonathan N. Ledsky, an attorney, hereby certifies that a true and correct copy of the foregoing **Defendants' Memorandum In Support Of Their Motion For Partial Summary Judgment** was served upon:

James O. Latturner (jlatturner@edcombs.com)
Dan Edelman (cortecl@aol.com)
Al Hofeld (aholfeld@edcombs.com)

by the filing of said document through the Court's electronic filing system this 1st day of November, 2005.

s/ Jonathan Ledsky

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Sarah Hamm,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 05 C 227** |
| | ) | |
| **Ameriquest Mortgage Company et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Ameriquest Mortgage Company's, Defendant Ameriquest Mortgage Securities, Inc.'s., and Defendant AMC Mortgage Services' (collectively referred to as "Ameriquest") motion for summary judgment. For the reasons stated below, we grant the motion for summary judgment.

**BACKGROUND**

Plaintiff Sarah Hamm ("Hamm") alleges that on January 19, 2002, she obtained a mortgage loan from Defendant Ameriquest Mortgage Company which was secured by a mortgage on her residence in Markam, Illinois. Hamm claims that

she sought out the loan in order to pay off her credit cards, make home repairs, and pay off the loan on a family member's car. Hamm alleges that based upon her discussions with Ameriquest employees prior to the closing on the mortgage, Hamm believed that she was going to receive a fixed-rate loan, but that at the closing she discovered that she was receiving an adjustable rate loan that could have interest rates as high as 16.99%. Hamm also contends that the payment schedule for the loan payments was not adequately disclosed to her before closing. Hamm acknowledges that, despite her misgivings about the change in terms in the mortgage and the lack of clarity in the disclosures to her, Hamm signed all the closing documents. The closing documents included a Notice of Right to Cancel that informed Hamm of a three day recision period during which she had a right to rescind the mortgage agreement. Hamm also signed a One Week Form that informed her of Ameriquest's policy of providing her with seven days to cancel the mortgage agreement. Hamm also signed a document that represented she had read and understood all the documents. Hamm claims that she was told at closing that she would receive a copy of the closing documents "in a couple of days" and that she received the documents two days after the closing. Hamm alleges that Ameriquest assigned her mortgage to Ameriquest Mortgage Securities, Inc. and the loan is being serviced by AMC Mortgage Services. Hamm brought the instant action seeking to have the mortgage rescinded based upon alleged deficiencies in the disclosures relating to her recission rights and the payment plan that were provided by Ameriquest in violation of the

Truth in Lending Act ("TILA"), 15 U.S.C. § 1601. Hamm also seeks statutory damages and attorneys' fees under TILA.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

Ameriquest argues that it is entitled to summary judgment because its disclosures regarding the right to recision and the payment schedule were proper under TILA. Ameriquest also argues that statutory damages are barred by the statute of limitations.

### I. Disclosure of Recision Rights

Hamm argues that Ameriquest did not adequately inform her of her recision rights under TILA. Pursuant to 15 U.S.C. § 1635(a), a consumer of a credit transaction "shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under [Section 1635] together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the

Board, of his intention to do so." 15 U.S.C. § 1635(a). The creditor is required to "clearly and conspicuously disclose" to the consumer his or her right to rescind the transaction within the specified period. *Id.* Whether or not disclosures comply with "TILA-mandated disclosures is determined from the standpoint of the ordinary consumer." *Rivera v. Grossinger Autoplex, Inc.*, 274 F.3d 1118, 1121-22 (7th Cir. 2001); *see also Lifanda v. Elmhurst Dodge, Inc.*, 237 F.3d 803, 806 (7th Cir. 2001)(cautioning the courts not to deem an ordinary consumer to have the business and legal knowledge of "a Federal Reserve Board member, federal judge, or English professor").

In the instant action, Hamm admits pursuant to Local Rule 56.1 that Ameriquest's Notice of Right to Cancel is identical to Recision Model Form H-8 and thus Ameriquest would be entitled to a safe harbor protection in regards to the Notice of Right to Cancel pursuant to 15 U.S.C. § 1604. Hamm acknowledges that the Notice of Right to Cancel was sufficient, but argues that "Ameriquest negated [the] otherwise clear and conspicuous disclosure of the right to cancel by delivering a 'One-Week Cancellation Period' form." (Ans. SJ 8). Hamm also contends that the One Week Form would create confusion for an ordinary consumer by apparently modifying or waiving the clearly established three day recision period included in the Notice of Right to Cancel. Hamm contends that although the seven day extension period provided in the One Week Form appears to be a concession provided by the generosity of Ameriquest, the form actually is intended to create

confusion and inhibit a loan applicant's ability to cancel mortgage agreements.

We first note that Hamm concedes that she did not actually rely upon the One Week Form and therefore did not suffer any actual damages based upon the One Week Form. Hamm admits pursuant to Local Rule 56.1 that she did not read the One Week Form until months after the closing. ( R SF 21). Actually, Hamm admitted at her deposition and admits pursuant to Local Rule 56.1 that she "did not rely on any of the statement contained in the one Week Form" and that it "had no influence on her at all." ( R SF 23). Hamm also acknowledges that she was given an opportunity to read the One Week Form at the closing and signed a document stating that she read and understood all the documents, even though she did not do this. ( R SF 6, 8). Hamm admits pursuant to Local Rule 56.1 that "she did not wish to cancel her loan during the federal three day recision period or during Ameriquest's seven day recision period." ( R SF 24). Hamm is thus seeking to rescind the mortgage agreement and statutory damages based solely upon a technical and immaterial contention.

Hamm admits that she was provided with the appropriate three day notice in the Notice of Right to Cancel. The mere fact that Ameriquest provided Hamm with a separate document that explained Ameriquest's policy allowing a loan applicant seven days to cancel the loan agreement clearly should not have in any way confused an ordinary consumer. The express instructions in the Notice of Right to Cancel explaining the three day recision rights was not in any way altered or

abrogated by the language in the One Week Form. The One Week Form begins by specifically delineating the right to a three day recision period, which is described as a "right under Federal or state law." ( R SF 18). In a separate paragraph later in the one Week Form, Ameriquest explains that it is their policy to give one week to a loan applicant to cancel the loan in order to "give [the consumer] more time to study [the] loan documents, obtain independent advice and/or shop for a loan that [the consumer] believes is better. . . ." ( R SF 18). It would be clear to an ordinary consumer that the three day recision period and the one week cancellation period provided to Hamm are not synonymous. Also, as noted above, the Notice of Cancellation was provided to Hamm on a separate form from the One Week Form. Thus, no reasonable trier of fact could conclude that Ameriquest's disclosures regarding the right of recision were inadequate under TILA.

## II. Payment Schedule

Hamm also argues that the payment schedule was not adequately disclosed by Ameriquest. She contends that she did not understand that her payments would be monthly payments because the word "monthly" did not appear in the mortgage documents. However, the payment schedule was adequately laid out in several documents signed by Hamm at the closing. She also signed documents that explained that there would be approximately 360 payments due over the course of 360 months. ( R SF 26). Thus, it should have been clear to an ordinary consumer

that her payments would be monthly and she should not have had any confusion regarding the payment schedule. Hamm's arguments clearly seek to manufacture a point of confusion where none existed for the purposes of defeating the summary judgment motion. Thus, no reasonable trier of fact could conclude that the disclosures regarding the payment schedule were not clear for an ordinary consumer. We also note that Hamm admits pursuant to Local Rule 56.1 that she "understood both prior to, and after, her loan closing that her payment would be due monthly," ( R SF 12), and that her complaints about the adequacy of the payment schedule is also based solely on a technical and immaterial contention.

III. Statute of Limitations

We also note that even if we were to deny Ameriquest's motion for summary judgment based upon the above issues, Hamm's request for statutory damages are time-barred by the statute of limitations. Pursuant to 15 U.S.C. § 1640(e), "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Hamm alleges that the loan closing was in 2002 and she did not bring the instant action until January of 2005, which is well after the limitations period. Hamm argues that since she has an extended right to rescind the agreement, the statute of limitations period is also extended. However, Hamm cites no controlling precedent to support such a notion.

We agree with the holding in *Brown v. Nationscredit Financial Services Corp.*, 349 F.Supp.2d 1134 (N.D. Ill. 2005), which addressed and rejected the same argument that is presented by Hamm. In *Brown*, the plaintiff pointed out that "[i]f the lender neglects to make a material disclosure as defined in the implementing regulations, the borrower's right to rescind may be extended for up to three years." *Id.* at 1137. The plaintiff in *Brown* thus argued that a statutory damages claim based upon recision rights disclosures is provided a three year statute of limitations period. *Id.* The court in *Brown* stated that it did "not believe that in adopting § 1635(g), Congress intended to alter the one-year statute of limitations applicable to damage claims" and that "[n]otably, § 1635(g) contains no language to suggest that Congress intended to override the statute of limitations set out in § 1640(e)." *Id.* Therefore, even if we were not to grant summary judgment on the above issues, Hamm would be barred from recovering statutory damages in the instant action.

## CONCLUSION

Based on the foregoing analysis, we grant Ameriquest's motion for summary judgment.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: September 27, 2005