IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHIRLEY JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No.  05 CV 432 |
| v. ) | |
| ) | Judge Coar |
| AMERIQUEST MORTGAGE COMPANY, ) | Magistrate Judge Schnekier |
| AMERIQUEST MORTGAGE ) | |
| SECURITIES, INC., and AMC ) | |
| MORTGAGE SERVICES, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Shirley Jones filed this action seeking statutory damages and rescission of her mortgage for alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*. She has filed the instant motion seeking supplemental attorney's fees and costs incurred after September 19, 2006.

### BACKGROUND

On January 31, 2006, this Court granted Plaintiff summary judgment on liability, holding that Ms. Jones was entitled to rescission and statutory damages for Defendants' failure to rescind her mortgage loan. *Jones v. Ameriquest Mortgage Co., et al.*, No. 05 C 432, 2006 U.S. Dist. LEXIS 3788 (N.D. Ill. Jan. 31, 2006).  Plaintiff had two alternative theories of liability, the first premised on a disclosure statement that failed to define the intervals for Plaintiff's loan repayment (the "Disclosure Statement"), the second on a one-week rescission right notice that Defendants included alongside the TILA-mandated three-day rescission right notice (the "One-Week Form").  *Id.* at *10.  On July 17, 2006, this Court's summary judgment decision held that the Disclosure Notice violated the TILA, but that genuine issues of material fact remained as to

1

whether the One-Week Form did as well. *Id.* at *26. "Once [a district court] has entered judgment giving the plaintiff all the relief that it was seeking, the plaintiff's remaining ground merged in the judgment, which ended the case in the district court." *Hamm v Ameriquest Mortgage Company*, 506 F.3d 525, 527 (7th Cir. 2007) (quoting *Indiana H.B. R.R. Co. v. American Cyanamid Co.*, 916 F.2d 1174, 1183 (7th Cir. 1990)). Thus, on the basis of the Disclosure Statement's violation of the TILA, this Court awarded Plaintiff $2,000 in statutory damages, rescission of the mortgage, and also required her to tender the rescission amount of $23,693.11 to Defendant Ameriquest Mortgage Securities—all of the relief Plaintiff was seeking. *See* Dkt. 119. On September 19, 2006, this Court awarded Plaintiff $62,064.75 in attorney's fees and $5,298.57 in costs. *See* Dkt. 148.

Defendants appealed the summary judgment ruling. The appeal was consolidated with *Hamm v. Ameriquest Mortgage Co.*, No. 05 C 227 (N.D. Ill.), a case presenting identical issues and in which a different district court granted summary judgment in favor of defendants on both the Disclosure Statement and One-Week Form issues. On October 17, 2007, the Seventh Circuit affirmed the summary judgment ruling for Plaintiff and reversed the district court's decision in *Hamm* with respect to the Disclosure Statement issue. *Hamm v Ameriquest Mortgage Company*, 506 F.3d 525 (7th Cir. 2007). The Seventh Circuit did not reach the issue of the One-Week Form. *Id.*

Plaintiff now seeks an additional $47,642.00 in attorney's fees and $1,803.77 in costs incurred in connection with the appeal, after the original September 19, 2006 attorney's fees and costs award. Defendant initially opposed the motion on the grounds that it should be stricken for Plaintiff's failure to comply with Northern District of Illinois Local Rule 54.3, which governs attorney's fees and related non-taxable expenses. However, on May 19, 2008, Magistrate Judge

Schenkier held that the parties' failures to comply with Local Rule 54.3 did not cause either side to suffer prejudice and did not impair this Court's ability to determine the supplemental petition on the merits. This Court therefore proceeds to the motion on its merits.

**ANALYSIS**

Defendants advance two main arguments in opposition to Plaintiff's request for additional attorney's fees and expenses. First, Defendants argue that Plaintiff is not entitled to fees on an issue that she did not win on appeal (i.e., the One Week Form issue). Second, Defendants argue that the fees are unreasonable—e.g., that the billing rates are excessively high, that the fees sought exceed the value of the judgment, and that Plaintiff billed for work that should not be counted toward the calculation of attorney's fees or costs. Each argument will be addressed in turn.

**1. Attorney's Fees and Costs for Unsuccessful Claims**

In any action in which a person is determined to have a right of rescission under Section 1635 of the TILA, the TILA-violating creditor is liable for "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1640(a)(3). *See de Jesus v. Banco Popular de Puerto Rico,* 918 F.2d 232, 233-34 (1st Cir.1990); *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164, 1166n.6 (7th Cir. 1997) ("The First Circuit has held that the award of attorney's fees to a successful plaintiff in an action under the [TILA] is mandatory" and reasoning that because the language of the attorney's fees provision in TILA is identical to the parallel provision in the FDCPA, attorney's fees were also mandatory under FDCPA) (citing *de Jesus*).

"It is a 'settled proposition that congressional goals underlying the Truth-in-Lending Act include the creation of "a system of private attorney generals" who will be able to aid the effective enforcement of the [TILA].'" *Clay v. Johnson*, 77 F.Supp.2d 879, 887 (N.D.Ill. 1999), *rev'd on other grounds*, 264 F.3d 744 (7th Cir. 2001) (citing *Sosa v. Fite,* 498 F.2d 114, 121 (5th Cir. 1974)). To effectuate this goal, Congress has provided for mandatory fees to all successful plaintiffs, realizing that "most TILA plaintiffs are not 'model borrowers.'" *Id.* (quoting *Semar v. Platte Valley Fed. Sav. & Loan Assoc.,* 791 F.2d 699 (9th Cir.1986)). Congress did not intend for TILA to apply only to sympathetic consumers; Congress designed the law to apply to all consumers, who are inherently at a disadvantage in loan and credit transactions. Thus, because the "attorney's fees provision is phrased in mandatory, rather than discretionary terms, it is evident that fees may be denied a successful plaintiff only in the most unusual of circumstances" such as bad faith, obdurate conduct, unjust hardship, or special circumstances. *Id.* (quoting *de Jesus,* 918 F.2d at 234 & n. 4).

Against this, Defendants argue that attorney's fees and costs are inappropriate here because "attorney's fees should be awarded only for the preparation and presentation of claims on which the plaintiff has prevailed." Defs.' Br. 11. Defendants argue—and Plaintiff does not dispute—that the majority of Plaintiff's counsel's work in Jones' appeal was devoted to briefing and arguing the One-Week Form issue, and that the Disclosure Statement issue was the subject of the attorney's labor in Hamm's appeal. (The same firm represented both Hamm and Jones in the consolidated Seventh Circuit appeal.) In *Hensley v. Eckerhart*, the Supreme Court held, with respect to the Civil Rights Attorney's Fees Act:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants . . . counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim

> cannot be deemed to have been expended in pursuit of the ultimate result achieved. The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

461 U.S. 424, 434-35, 103 S.Ct. 1933, 1940 (1983). However, "because *Hensley* only disapproves of awarding attorney's fees for time spent on unsuccessful claims for relief that are *unrelated* to successful claims . . . time spent on unsuccessful, *related* claims *may* be compensated." *Mary Beth G. v. Chicago*, 723 F.2d 1263 (7th Cir. 1983) (citing *Hensley*, 461 U.S. at 435) (emphasis in original). The Seventh Circuit elaborated on the difference between related and unrelated claims in its opinion in *Mary Beth G.*, which Defendants cite in support of their argument but leads this Court to the opposite conclusion.

> *Hensley* recognizes that "there is no certain method of determining when claims are 'related' or 'unrelated.' " *Id.* at 1941 n.12. The case instructs, however, that the starting point for separating an *un*related, unsuccessful claim from a related, unsuccessful claim is to determine whether a particular unsuccessful claim shares a "common core of facts" with the successful claim or is based on a "related legal theory." *Id.* We believe a useful tool for making this determination is to focus on whether the claims seek relief for essentially the same course of conduct. Under this analysis, an unsuccessful claim will be *un*related to a successful claim when the relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised.

*Mary Beth G.*, 723 F.2d at 1279 (footnotes omitted). The Seventh Circuit then went on to hold that the plaintiff's unsuccessful false arrest and excessive force claims requested relief for courses of conduct independent of her strip search claim.

Unlike the claims in *Mary Beth G.*, the One-Week Form and Disclosure Statement issues are clearly related under this definition. Both documents arose from the same core of facts—the loan that Defendants provided Plaintiff. They propose alternative theories of liability for violations of the TILA. Plaintiff cannot even be said to have been "unsuccessful" on the One-Week Form claim; the district court and the Seventh Circuit did not need to determine whether

5

Plaintiff prevailed on the One-Week Form issue because she clearly prevailed in proving that the Disclosure Statement violated the TILA. It is possible that the Seventh Circuit could have overturned this Court's ruling on the Disclosure Statement and remanded the case for trial on the issue of the One-Week Form. Under these circumstances, this Court will not preclude an award of supplemental attorney's fees and costs simply because Plaintiff has not prevailed on the One-Week Form issue.

**2. Reasonable Fees**

"In calculating reasonable attorney's fees, the district court should first determine the lodestar amount by multiplying the reasonable number of hours worked by the market rate." *Gautreaux v. Chicago Housing Authority*, 491 F.3d 649, 659 (7th Cir. 2007) (quoting *Bankston v. State of Ill.,* 60 F.3d 1249, 1255 (7th Cir.1995)). "The reasonable hourly rate used in calculating the lodestar must be based on the market rate for the attorney's work. The market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Id.* (citations and internal quotations omitted). "The burden of proving the market rate is on the party seeking the fee award. However, once an attorney provides evidence establishing his market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded." *Id.* at 659-60 (quoting *Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 407 (7th Cir.1999)). When a firm maintains contingent fee or public interest practice, the court may look to the rate charged by lawyers in the community of "reasonably comparable skill, experience and reputation." *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307 (7th Cir. 1996).

In the instant case, Plaintiff's firm, Edelman, Combs, Latturner & Goodwin, LLC, is primarily in the business of consumer protection law. Pl.'s Renewed Supplemental Pet. for

Attorney's Fees, Ex. L, Edelman Affidavit ¶ 10-15. It has brought numerous cases challenging predatory lending practices. *Id.* at ¶ 17. The firm is small, with five principals and nine associates. *Id.* at ¶ 1. Plaintiff's firm seeks fees for 12.2 hours of paralegal work at $100 per hour, 2.4 hours of work by the firm's partners at a rate of between $450 and $550 per hour, and 162.40 hours of work by firm associate Al Hofeld at a rate of $280 per hour. Parties' Local Rule 54.3 Joint Statement, Appendix A. Plaintiff claims these rates are consistent with what the firm charges fee-paying clients. Edelman Aff. at ¶ 34.

Defendants argue that these estimated hourly rates are unreasonably high, particularly Associate Al Hofeld's rate of $280 per hour. Just as is the case with Fair Debt Collection Practices Act claims, in order to encourage able counsel to undertake TILA cases, as Congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases. *See Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164, 1167 (7th Cir. 1997) (attorney's fees under FDCPA); *Tolentino v. Friedman,* 46 F.3d 645, 652 (7th Cir. 1995), *cert. denied,* 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995). Still, in the cases that Plaintiff cites to support her calculation of rates, the reasonable rates have generally been slightly lower. *See, e.g.*, *Schulz v. Oxford Management Services, Inc.*, No. 05 C 3133 (N.D. Ill. Oct. 21, 2005) ($425 per hour for partner, $190 for associate with two years of experience); *Smith v. American Revenue Corp.*, No. 04 CV 199 (N.D. Ind. Oct. 4, 2005) ($385 for partner, $190 for associate with two years of experience); *Levin v. Kluever & Platt, LLC*, No. 03 C 2160 (N.D. Ill. Sept. 2004) ($335-400 per hour for partners, $190 per hour for associate with four years of experience); *Payton v. New Century Mortgage, Co.*, No. 03 C 333, 2004 WL 524693 (N.D. Ill. March 11, 2004) ($370 per hour for partners, $210 for associate with seven years of experience); *Johnson v. Fast Cash Advance, Inc.*, No. 00 C 1875 (N.D. Ill. Feb. 25,

2003) ($310-360 per hour for partners, $200 per hour for associate with six years of experience). In sum, previous courts have upheld rates of $190-210 per hour for the firm's associates with between two and six years of experience. The most current attorney's fees award Plaintiff cites is four years old. In *Covington v. District of Columbia,* 839 F.Supp. 894 (D.D.C. 1993), Judge Lamberth found that it was appropriate to have an annual increment of $10 per year for a lawyer's billing rate to account for inflation. *See also Payton*, 2004 WL 524693 at *2. Al Hofeld graduated from law school in 2000, so he had between six and seven years of experience when his time was billed. His closest comparator is therefore the associate with seven years of experience billed at $210 per hour in *Payton*; in 2009 terms, he should be compensated at a rate of $250 per hour. Plaintiff's calculation for partner rates is also slightly high. This Court will use the figure from *Schulz*, adjusted for inflation. Thus, the Court finds reasonable rates for the attorneys to be:

| | |
|---|---|
| Partners (James Latturner, Tara Goodwin, Cathleen Combs): | $465 per hour |
| Associate (Al Hofeld): | $250 per hour |

The paralegal rate of $100 per hour is not contested by Defendants. The lodestar method thus results in an amount of $42,936.[1]

Defendants further protest the reasonableness of Plaintiff's attorney's fees on several bases: (1) Plaintiff's attorney's fees are in excess of her recovery; (2) Plaintiff's prebills are too vague; (3) Plaintiff includes charges for paralegal work that was secretarial in nature; (4) and Plaintiff charges too many hours for work that Defendants contend should have taken less time. *See generally* Def.'s Response Mem.

---

[1] This number was arrived at through the following calculation: Associate labor ($250 x 162.4) + partner labor ($465 x 2.4) + paralegal labor ($100 x 12.2).

The methodology employed by the Seventh Circuit in determining appropriate fees for successful suits under the Fair Debt Collection Practices Act (itself modeled on attorney's fees for 42 U.S.C. § 1988 causes of action) will serve as a useful guide for the determination of attorney's fees for successful TILA claims. *See Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164, 1167 (7th Cir. 1997) (citing *Hensley,* 461 U.S. at 433). In this determination, the "most critical factor" in determining the reasonableness of the award is the degree of success obtained. *Zagorski*, 128 F.3d at 1167 (citing *Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 574 (1992)). Success must be measured not only in the amount of the recovery but also in terms of the principle established and the harm checked. *Id.* Here Plaintiff was given all of the relief she requested. Her small private victory has had the effect of shielding other consumers from Defendants' violations of TILA's disclosure requirements. Furthermore, "[t]he cumulative effect of petty violations . . . may not be petty, and if this is right then the mere fact that the suit does not result in a large award of damages or the breaking of new . . . ground is not a good ground for refusing to award any attorney's fees." *Hyde v. Small,* 123 F.3d 583, 585 (7th Cir.1997). Thus, the fact that Plaintiff recovered only statutory damages in the amount of $2,000 and a rescission of her $51,800 mortgage would not, as Defendants urge, preclude the recovery of supplemental attorney's fees.

Finally, with regard to Defendants' disputes over individual charges, this Court has reviewed Plaintiff's prebill worksheets and found them not too vague as to be unreasonable. However, the Court agrees that some of Plaintiff's preparation, especially time spent by Hofeld in preparation for oral argument before the Seventh Circuit, is excessive. Plaintiff's prebills list the following entries, all billed by Hofeld:

| 3/12/07 | 4.50 hours | began preparing for moot argument by reading briefs, |

|         |             | making outline |
|---------|-------------|----------------|
| 3/14/07 | 7.90 hours  | prepared for moot argument w/partners; did argument |
| 3/21/07 | 6.20 hours  | worked on outline to prep for moot session and held moot session w/ DAE, JOL, CMC |
| 3/29/07 | 2.80 hours  | prepared for moot argument with partners; had moot session |
| 4/4/07  | 11.10 hours | read cases, wrote case summaries, organized published decisions in binder, revised written oral argument, had moot session with partners |
| 4/6/07  | 6.15 hours  | read Supreme Court cases, drafted addit authority letter to 7th Cir.; prepared case summaries; revised oral argument text; presented moot argument to partners, took questions/discussed issues |
| 4/7/07  | 10.10 hours | prepare for oral argument |
| 4/8/07  | 9.50 hours  | prepare for oral argument |
| 4/9/07  | 9.00 hours  | prepare for argument, mooted with partners |
| 4/10/09 | 10.50 hours | prepare for argument, mooted with partners |

Not counting the April 4 and 6, 2007 entries because they may represent time spent on other tasks, Al Hofeld spent about 60.5 hours exclusively preparing for and mooting his oral argument. The Court appreciates the labor that went into Hofeld's 49-page Appellee's Brief and a 27-page Appellee's Reply Brief to the Seventh Circuit, and likewise appreciates attorneys who approach their labor diligently, but 60.5 hours remains too much time to spend on this one particular task in this litigation. *Compare Ustrak v. Fairman*, 851 F.2d 983, 987 (7th Cir. 1988) ("The district court allowed 38 hours of attorney time for preparation for the oral argument of the appeal. Almost a week's work is far too much for preparing to argue an appeal in a case involving simple facts, a three-day trial, and legal issues of limited (though not trivial) scope and novelty . . . . We shall knock 22 hours off this request."). The issue on appeal was relatively straightforward: whether the District Court erred in denying Plaintiff summary judgment on her claim that the One-Week Form operated as an impermissible waiver and modification of the consumer's TILA rescission rights. The Court believes that a full week of preparation and mooting is more reasonable than the 60.5 hours Plaintiff's counsel has billed. Accordingly,

10

Hofeld's hours will be reduced by 20, and the lodestar amount will be reduced by $5000 (20 x $250).

## CONCLUSION

Defendants do not contest Plaintiff's estimate of costs at $1,803.77. Accordingly, supplemental attorney's fees and costs are awarded to Plaintiff in the amount of $39,739.77.

Enter:

                                                          <u>/s/ David H. Coar</u>
                                                          David H. Coar
                                                          United States District Judge

**Dated:** March 10, 2009